```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
    _____

    LABORERS' LOCAL UNION NOS.
    472 & 172 AND LABORERS' LOCAL       1:19-cv-14119-NLH-KMW
    UNION NOS. 472 & 172 WELFARE
    AND PENSION FUNDS AND SAFETY,       OPINION
    EDUCATION AND TRAINING FUNDS;
    and ZAZZALI, FAGELLA, NOVAK,
    KLEINBAUM & FRIEDMAN, P.C.,

              Petitioners/Cross-
              Respondents,

    v.

    NINSA, LLC,

              Respondent/Cross-
              Petitioner.
    _____
```

**APPEARANCES:**

EDWARD H. O'HARE
ZAZZALI, FAGELLA, NOWAK, KLEINBAUM & FRIEDMAN, PC
570 BROAD STREET
SUITE 1402
NEWARK, NJ 07102-5410

    *Counsel for Petitioners/Cross-Respondents.*

CHARLES E. WOOLSON, JR.
LAW FIRM OF CHARLES E. WOOLSON, JR. LLC
206 FAIRVIEW AVENUE
P.O. BOX 851
HAMMONTON, NJ 08037

    *Counsel for Respondent/Cross-Petitioner.*

**HILLMAN**, District Judge

    This matter comes before the Court on Laborers' Local Union

Nos. 472 & 172 and Laborers' Local Union Nos. 472 & 172 Welfare

and Pension Funds and Safety, Education and Training Funds; and Zazzali, Fagella, Novak, Kleinbaum & Friedman, P.C.'s (collectively, "Petitioners") motion to confirm an arbitration award (ECF No. 2) and NINSA, LLC's ("Respondent") cross-motion to vacate the same arbitration award (ECF No. 7). For the reasons set forth below, Petitioners' motion will be granted, and Respondent's motion will be denied.

## BACKGROUND

The dispute underlying this action centers around whether Respondent adequately contributed to fringe-benefit funds as required by a relevant collective bargaining agreement (the "CBA").[1] In relevant part, the CBA requires Respondent to make certain contributions to general welfare, pension, and vacation funds in a manner specified by the agreement. See (ECF No. 1 at 16-17).[2] In order to ensure employers adequately comply with their contribution requirements, the CBA provides that "the Trustees of the Fund shall have the right to require such

---

[1] Except as described *infra*, the parties do not dispute the valid and binding nature of the CBA.

[2] While Petitioners submit various excerpts of the CBA as exhibits to their motion, much of the text in those exhibits is unreadable. As such, the Court relies upon the recitation of those provisions as set forth in the arbitration award at ECF No. 1 at 16-17. Because neither party objects to the terms of the CBA or otherwise challenges the arbitrator's recitation of them, the Court is satisfied that relying on this portion of the record will not compromise either party's position.

2

reports from Employers as are necessary for the fulfillment of the Trustees' duties under the Agreement" and shall "have the right to inspect, at reasonable times and places, the employment, payroll and such other payroll related records of the Employer as are relevant to questions of the accuracy and/or comprehensive-ness of reports submitted by the Employer." (ECF No. 1 at 16). According to the record, the trustees of the funds directed that an audit of Respondent's books be conducted to determine whether Respondent complied with its contribution obligations. (ECF No. 1 at 21, ¶3). On July 20, 2018, an auditor determined that Respondent's contributions were delinquent and deficient, and that Respondent owed $368,674.26 to the various funds. (Id.).

The dispute was then presented for arbitration. On October 25, 2018, the parties appeared before the permanent arbitrator as set by the CBA, J.J. Pierson, Esq. A hearing was held, at which the arbitrator considered evidence and live testimony. Prior to issuing the award, the arbitrator directed the parties to file supplemental briefing on various issues, evincing a thorough consideration of the matter.

On June 5, 2019, the arbitrator rendered factual findings in a ten (10) page award, ultimately concluding that Respondent was bound by the CBA, the terms of which governed the parties' dispute; Respondent owed the funds $368,674.26 plus interest in

3

the amount of $113,060.10; Respondent owed the law firm of Zazzali, Fagella, Nowak, Kleinbaum & Friedman attorneys' fees, as provided for by the CBA, in the amount of $73,734.85; and Respondent, pursuant to the CBA, was responsible for the arbitrator's fee of $2,500. (ECF No. 1 at 22). In total, the award commands Respondent to pay Petitioners $557,969.21. (ECF No. 1 at 22).

On June 21, 2019, Petitioners filed the present action seeking to confirm the arbitration award (ECF Nos. 1 and 2). Respondent opposed and filed a cross-motion to vacate the arbitration award (ECF No. 7), which Petitioners timely opposed (ECF No. 14). As such, the pending motions are either fully briefed, or the time within which to oppose them has passed, rendering them ripe for adjudication.

## DISCUSSION

### I. Subject Matter Jurisdiction

The Federal Arbitration Act ("FAA") does not create any "independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, n. 32, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). "However, Section 301 of the LMRA, 29 U.S.C. § 185, 'grants this Court jurisdiction to confirm or vacate arbitration awards between a labor union and an employer.'" Id. (quoting Indep. Lab. Emples. Union, Inc. v. ExxonMobil Research & Eng'g

4

Co., No. 18-10835, 2019 WL 3416897, at *4 (D.N.J. July 29, 2019)). Here, Petitioners properly brought this action to confirm an arbitration award between a labor union and an employer pursuant to the FAA and allege that the LMRA provides this Court with adequate subject-matter jurisdiction. The Court, therefore, exercises subject matter jurisdiction pursuant to 29 U.S.C. § 185.

**II. Whether Confirmation of the Arbitration Award Is Appropriate**

Respondent argues that the arbitration award should be vacated pursuant to 9 U.S.C. § 10(a)(3) because the arbitrator failed to consider a defense it raised. Specifically, Respondent argues that the arbitrator failed to consider "a letter dated September 1, 2018 from [Respondent] to Petitioner . . . [that was] introduced at the hearing and marked Exhibit F-2" that Respondent alleges evinces the existence of a condition-precedent to its agreement to enter into the CBA, a condition Respondent alleges had not been satisfied. See (ECF No. 7-1 at 2). Respondent concedes that "the letter was referenced in the Award" but argues that "the Arbitrator failed to consider or discuss the defense raised in the letter about the conditions raised[.]" (Id.).

Petitioners argue that the award is valid, and that the arbitrator fully considered all evidence, including the very

5

letter Respondent complains was not adequately considered. (ECF No. 14 at 4-6).

"Courts play a very limited role in reviewing the decision of an arbitrator appointed pursuant to a collective bargaining agreement." CITGO Asphalt Refining Co. v. PACE Workers Int'l Union Local No. 2-991, 385 F.3d 809, 815 (3d Cir. 2004). A court reviews an arbitration award "under an 'extremely deferential standard,' the application of which 'is generally to affirm easily the arbitration award.'" Hamilton Park Health Care Ctr. v. 1199 SEIU United Healthcare Workers E., 817 F.3d 857, 861 (3d Cir. 2016) (quoting Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003)).

"Section 10(a)(3) permits a court to vacate an arbitration award where, *inter alia*, the arbitrator was guilty of 'misbehavior by which the rights of any party have been prejudiced.'" Sabre GLBL, Inc. v. Shan, 779 Fed. Appx. 843, 856 (3d Cir. 2019) (quoting 9 U.S.C. § 10(a)(3)). "'Arbitrators have wide latitude in how they conduct proceedings'; hence, a court's role in reviewing an arbitrator's procedural decisions is extremely limited." Id. (quoting Office & Prof'l Emps. Int'l Union, Local No. 471 v. Brownsville Gen. Hosp., 186 F.3d 326, 334-35 (3d Cir. 1999)). "A court may vacate an arbitration award based on an arbitrator's error in 'the receipt or rejection of evidence' only if the error 'so affects the rights

6

of a party that it may be said that he was deprived of a fair hearing.'" Id. (quoting Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 397 F.2d 594, 599 (3d Cir. 1968)).

As a reviewing court, we do not "correct factual or legal errors made by an arbitrator," and we will uphold an award even if the arbitrator engaged in "improvident, even silly, factfinding[.]" Ario v. Underwriting Members of Syndicate 53 at Lloyds, 618 F.3d 277, 296 (3d Cir. 2010) (quoting Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 279-80 (3d Cir. 2004)).

In this action, Respondent concedes the arbitrator permitted evidence about the document referenced, specifically acknowledging that it was marked as an exhibit during the arbitration proceeding and that reference is made to it in the arbitrator's award. (ECF No. 7-1 at 2). While Respondent argues the arbitrator did not fully consider the substance of the exhibit as a potential defense to the arbitration, such is simply not supported by the record. Notably, Respondent provides no citation to any portion of the arbitration record supporting its conclusion. Nor has Respondent explained how the alleged error impacts its rights so significantly that it could be said that it was deprived of a full and fair hearing. Sabre GLBL, Inc. v. Shan, 779 Fed. Appx. at 856 (quoting Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 397

7

F.2d at 599).

This Court's review of the relevant exhibit confirms that the arbitrator in fact considered – and rejected – Respondent's defense to enforcement of the CBA. Although not fully explained in Respondent's briefing to this Court, Respondent's "defense" to the CBA is plainly set forth in the letter. Although described by Respondent as a failure to meet a "condition precedent" the defense is misnamed or misdescribed.

What Respondent alleged before the arbitrator, and seeks to contend here, is not that the contract was conditioned upon the happening of an event <u>before</u> the parties were bound,[3] but rather that the parties had a separate, oral side agreement. Specifically, that ancillary agreement – according to the exhibit – was that the CBA would offer benefits to non-union members working for Respondent directly (despite the express terms of the CBA) and that if Respondent signed the CBA, its non-union workers could obtain a "union book" at some point <u>in the future</u>. Since only one employee eventually received a union book, the argument goes, Respondent was not bound by the CBA. In essence, Respondent argues that because the union-petitioners

---

[3] A "condition precedent" is "[a]n act or event, other than the lapse of time, that must exist or occur before a duty to perform something promised arises." Black's Law Dict. p. 334 (9th ed. 2009).

8

later breached an oral side agreement, Respondent was not bound by the written terms of the CBA.

The decision of the arbitrator plainly reveals that he considered both aspects of Respondent's argument. More specifically, the arbitrator expressly noted Petitioners' response to both arguments: a) labor law precludes the type of agreement Respondent claims Petitioners' representative allegedly agreed to; and b) in any event, the representative lacked the authority to enter into an agreement altering the terms of the CBA. (ECF No. 1 at 15). By extensively citing and discussing the well-established law barring the parties from treating non-union and union workers differently, and finding the parties were bound to the express terms of the CBA, the arbitrator clearly rejected Respondent's arguments. (ECF No. 1 at 18-19).

Two other points are worth noting. First, Respondent fully participated in the arbitration. This would not bar Respondent from arguing the existence of a side agreement - an argument it in fact made - but it would seem to undermine any claim of a failure to satisfy a condition precedent. Stated differently, the obligation to arbitrate arose from the CBA and Respondent's participation would seem a tacit admission that it was a party to that agreement.

Second, and importantly, the arbitrator directed Petitioner

to submit a legal memorandum of law addressing the very legal claims Respondent now argues the arbitrator ignored. Petitioners' counsel timely replied. Despite a clear opportunity to do so, Respondent's counsel "never replied nor responded." (ECF No. 1 at 15). In light of such circumstances, Respondent's argument that its voice was not heard is badly misplaced.

Convinced therefore that the arbitrator fully considered the arguments of the parties, Respondent's motion to vacate the arbitration award will be denied. As a corollary, finding no basis to reject the arbitrator's award, the Court will confirm the award and grant Petitioners' motion.

## CONCLUSION

For the reasons expressed above, the Court will deny Respondent's motion to vacate the arbitration award (ECF No. 7) and will grant Petitioners' motion to confirm the arbitration award (ECF No. 2).

An appropriate Order and Judgment will follow.


Date: January 8, 2020          s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.